At this time, would Attorney Megan Sidahl please come to the podium and introduce herself on the record to begin? Good morning. May it please the Court. Good morning. May I reserve two minutes of my time for rebuttal? Yes. Thank you. Mr. Tucker seeks a new trial after the government conceded that it failed to disclose impeachment information about a key witness at trial, and because some jurors made disparaging comments suggesting pre-deliberation and bias. I plan to address each of these issues in turn. The government appropriately acknowledges that it did not disclose exculpatory information that went to a key witness's motive for bias. The question for this Court is, therefore, whether the District Court erred in finding that there was no reasonable probability that timely disclosure would have changed the result. There's at least four factors that go into that inquiry. The parties agree as to one of those factors, namely that the suppressed evidence was not collateral. As to the others, the District Court either made findings of fact that were favorable to Mr. Tucker or made findings of fact that were contradicted by the record. The first factor is whether Morgan, the key witness's testimony, was corroborated on a key issue. Under Connolly, a new trial may be warranted where impeachment of an uncorroborated and essential witness is suppressed, and that's precisely what happened here. Morgan was essential to Mr. Tucker's conviction, certainly on count one, and I would contend on all the counts. In fact, the District Court said himself that Morgan may have been central to the case, and that's consistent with the testimony at trial. Morgan was described as being Mr. Tucker's second-in-command during the bulk of the alleged prostitution scheme, as well as a significant portion of the alleged charged drug scheme. Counsel, the District Court, in what struck me as a very thoughtful, very detailed bench decision, addresses both the contention that the evidence was not disclosed to the defense, that was not essential to impeachment. Indeed, it was cumulative, and he goes through all of the other witnesses who testified to such items as Jasmine's age, for example. And he also points out that there was a lot of corroboration from other witnesses on things that Morgan said. So where did the District Court go wrong in concluding that with respect to impeachment, it was cumulative or that there was plenty of other evidence that corroborated everything that Morgan was testifying to? Where did the District Court go wrong in that analysis? Well, I think on the issue of corroboration, the District Court's finding was contradicted by the record. So the District Court, and I'm relying primarily on one element of count one, which was whether Mr. Tucker knew or recklessly disregarded that Jasmine was under the age of 18. And the District Court relies on two pieces of testimony that he found corroborated that testimony. There were two other witnesses that addressed that issue, but neither of them strongly corroborated Morgan's testimony on that issue. And the question here is whether there was a reasonable probability that the result might have been different. Well, when you say strongly, it occurred to me that trial counsel must have made a strategic decision not to probe the details of the circumstances under which Jasmine and Haley indicated to your client that they provided Mr. Tucker with the age. I would agree that the defense counsel wasn't going to probe more into that issue on cross-examination, but I think the question is whether the government's case strongly corroborates Morgan's testimony on that issue. It was, of course, the government that bore the burden of proof there. Didn't Jasmine say that she herself told Tucker her age? She did testify that she told him, and she said that he, quote, kind of avoided it. But that's all we get from Jasmine. But why isn't that enough? Well, because I think there's not really much detail. For example, we don't actually know what made Jasmine conclude that Mr. Tucker was ignoring that information. We don't know anything about the circumstances of that conversation. We don't know what Jasmine said to him. We don't even know that Mr. Tucker actually heard it. But once the evidence was on the record, wasn't it up to the jury to determine what weight to give it? Yes. If this was a sufficiency test, I would agree that Jasmine's testimony would pass a sufficiency test. But the test here is not whether the evidence setting aside Morgan's testimony was sufficient supports the conviction. It's whether the lack of the impeachment information undermined confidence in the verdict, which is a defense-friendly standard unlike the sufficiency standard. Of course, her testimony that he was avoiding the issue, that's really not significant. The issue is, did he know? If he knew, he's guilty whether he avoided it or not. So it goes back to her flat-out statement that she told him she's talking to something she's an eyewitness to. There was really no cross attacking her credibility or suggesting any doubt on that. And then we have the trial judge saying he thought that was significant enough to carry the day without the other. We then have our standard review. We would have to hold that that was an abuse of discretion by the trial judge, a clear error? Yes. Yes, it's an abuse of discretion review. That's right. Well, and the trial judge also, he relied on Jasmine. He also relies on Haley's testimony. But what he says about Haley's testimony is actually not consistent with the admissible portion of her testimony at trial. So the district court says that Haley corroborated, and just quoting the district court, testifying that Jasmine couldn't buy cigarettes because she was under 18. But that detail actually doesn't come in as admissible evidence. So Haley initially says that she learns that Jasmine says she couldn't buy cigarettes because she was under 18. And then the court sustains a hearsay objection to that testimony. And then the testimony that goes on, Haley says that she learned Jasmine's age, and that she told Mr. Tucker Jasmine's age, but she doesn't testify as to what age she actually told him. And there's no admissible testimony that Mr. Tucker knew the detail that Jasmine couldn't purchase cigarettes. The second factor for the court to consider is the strength of the suppressed evidence. And although I acknowledge the district court ultimately concludes that the suppressed impeachment here was not particularly strong, the trial court's findings of fact undermine that conclusion. So in particular, the district court itself observed that Morgan suffered from credibility problems. So the district court notes that Morgan was volunteering information about violent acts by Mr. Tucker, quote, every time she spoke, and in a way that the district court was not sure enhanced her credibility. And I actually count 11 instances in the record where Morgan does that, especially on cross-examination, and often in response to questions that don't call for any information about violence. There's also other information that she blurts out. For example, at one point she says that Mr. Tucker was on parole, even though the government had been instructing its witnesses not to delve into that issue. Counsel, as part of your argument that it was important potential evidence not disclosed to you, you include in that the fact that the U.S. Attorney's Office in New Hampshire was considering adopting, proceeding with the prosecution that was pending with the state authorities. But the government makes the point that there's no proof in this record that Morgan was aware of the fact that the U.S. Attorney's Office was considering that. So even though that should have been disclosed, if Morgan was not even aware that that was under consideration, how could that be meaningfully used to impeach her in the sense that she would be trying to curry favor with federal authorities? And she had no idea that they were considering even moving against her. Isn't that a real problem with that part of your argument? Well, actually, that's actually one of the points that the district court ruled in favor of Mr. Tucker. So the district court is pretty clear that he thinks there's not really much of a distinction here, that as long as the witness has a motive to curry favor with authorities, he wasn't going to start drawing lines between which authorities' particular charges may have been pending before. And I think that conclusion makes sense. I think most laypeople, and Morgan is a witness who has a criminal history at this point in time, and there's testimony of a child that she had previously been in jail, I think most people would expect and hope that a federal prosecutor could help them on whatever charges they're facing. So Morgan knows for sure that she's facing pending state charges. She has an attorney in that case already. And she was cross-examined on that, the state charges. I don't think she was cross-examined on that. I read the record a little bit differently. There is direct testimony that she has pending state charges, but those pending state charges were not disclosed to the defense before trial, and the defense doesn't seem to have picked up on it at trial and doesn't follow through on that in cross-examination based on my reading of the record. So the cross-examination was just on her past criminal record, that's what you're saying? That's my memory, yes. And so I think in this particular case, the defense could have used this impeachment in a particularly powerful way in closing argument that you wouldn't ordinarily see from the defense. So, you know, there would have been a standard closing, portion of the closing, saying that, you know, Morgan obviously has a motive to curry favor with the prosecutors. But then I think the defense could have gone a step further here under the unique circumstances of this case and said, not only does Morgan have a motive to curry favor with prosecutors, you actually see her testifying consistently with that motive because she's going out of her way to volunteer information about violence on behalf of Mr. Tucker. And that combination could have been a pretty powerful closing argument for the defense that was not available to it. Do you want to get to your jury argument? I do, thank you, Your Honor. So on the jury issue, the parties have briefed two issues, the standard of review for this court as well as the merits of whether there was jury misconduct. On the standard of review, the government appears to concede that the manifest necessity standard does not apply when it's the defense that seeks the mistrial. And the government has invited this court to undertake the appropriate inquiry here to NoVo. So the government told the district court that this court can review in whatever depth or detail it chooses and that this is the forum where the issue should be resolved in Mr. Tucker's favor. Counsel, shouldn't we, instead of getting hung up on possibly an in-app standard that the district court invoked, shouldn't we focus on what the district court actually did? And what the district court did, the two jurors that seemed to be problematic in terms of some comments, they were removed, right? And then the district court also satisfied itself that the other jurors were not tainted by whatever misconduct those two jurors had been responsible for. So when you look at what the district court did, which I think is what we have to do, it seems hard to find fault with how the district court handled the issue. Well, where I would differ is whether the district court solution successfully resolved the taint on the jury. So I think there's really three potential issues facing the jurors. There's the comments that juror number seven makes that the district court acknowledges. Well, the district court found that there was no taint on the remaining jurors. And I think that finding is contradicted by the record because there's also references. So jurors reference that at least two other jurors were making comments about defense counsel, and I'm mindful that much of that is filed under seal, but I discuss that on page 63 of my brief. How many trials are there where the jurors don't make comments about counsel? It's one of the few things they feel they can talk about. Well, I would hope there's none, but I'm sure it does happen occasionally. We certainly don't hear about it much of the time. But I think here, you know, juror number seven's comments. Is your response. Thank you. The juror who reported juror number seven took an inference from what juror number seven, that it was negative for the defense's case, which is a little different than what we ordinarily see. Thank you, and we'd ask that the court grant Mr. Tucker a new trial. Thank you. Thank you. At this time, Mr. Aframe, please come up to the podium and introduce yourself on the record to begin. Good morning. May it please the Court, Seth Aframe for the United States, and with me at counsel table is Assistant U.S. Attorney Heather Cherniski. Good morning. Good morning. So the government concedes that the two pieces of evidence was impeachment evidence was suppressed. The first, that there were pending state charges in the Manchester, New Hampshire court against Morgan, and second, that the file was under consideration by an AUSA who was not trial counsel at the time. Why is that impeachment evidence? So this is a tricky part of the law. So do I think that opening your arms broadly and turning over everything that might be impeachment, we should turn that over? Possibly. Possibly. So if before trial someone in the U.S. Attorney's gets up one morning and thinks, you know, maybe we should consider prosecuting that person, they've got to make a phone call? Well, anyhow. So I understand your point, I do, and I thought about that, and I think it is something I think is worth pointing out, is I think this is why materiality is not a harmless error standard. It's part of the analysis because we can disagree about what we should turn over because it depends a lot on what people know. And as I try to point out in my brief, if she knew the fact, then on what basis are we not turning it over? But we could assume she doesn't know, but those are dangerous assumptions for a prosecutor to make. And what we've learned from lots of discovery issues that have arisen in lots of prosecutions, that we should take a very, very broad view of what to turn over. That's why I styled the brief that way, although I don't think the suggestion you just made is without force. So it comes down to, so those are the two things that I think at least, you know, in an ideal world would have been disclosed. So then we come down to what I think are three factors that we consider under this court's case law on whether a new trial should have been granted. And as Judge Kayada correctly pointed out, we do all of this under the abusive discretion standard, number one. And the other thing that was not said, but I want to point out, is that the burden squarely rests with the defendant on the materiality point because, again, it's not a harmless error problem, it's part of the violation. So let me focus. When the judge says with considerable force, if it were up to me, I would give her, excuse me, give him a new trial, but I am unfortunately constrained by the standards that I have to apply. I mean, I guess that's admirable candor on the part of the judge, but it's a little bit hard to disregard that statement. I mean, that suggests that he thinks there's, I guess in part, he's upset that the government did not provide the disclosure it should have, but there's a suggestion that there's something unfair about a trial that involved these failures to disclose. What are we supposed to do with that? So I'll ask you when you go back, as you read that again in terms of everything that he said, I'll tell you what I understand him to be saying when he says that. He is saying that in Mr. Tucker's shoes, anything I basically say to you, Mr. Tucker, about materiality or why under the law you don't get this is going to feel hollow to you, Mr. Tucker, because there was something you should have had that you didn't have, and I, Judge LaPlante, want to make sure that every person who comes into my courtroom leaves feeling that they have a fair trial. So if it were up to me, Judge LaPlante, I would want to give you that, Mr. Tucker. But read in the entirety of what he's saying, he's saying to Mr. Tucker, but that's not how the law works. The law has this other feature. I will decide that other feature, and this is how I decide it. So I think that's when he says, if it were up to me, that's the message he's trying to impart. And yes, he was not pleased that this wasn't turned over, and he, like I think every district court judge, wants a trial that doesn't have these kinds of motions for new trial issues. But in the end, he says, this is what the standard is, and I'm going to apply it. And as I think you pointed out, he does a thoughtful job of doing that, going through each and every element of each and every count and describing why the evidence is strong as to all. Well, on that, Ms. Sittle made a point that I think you need to respond to that, OK, the judge applied the right test, but he said he found that there was corroboration because of A, Jasmine's testimony, and B, I think it was what, Molly's testimony? Haley. And in citing that testimony, he then cited her testimony about the cigarettes that actually was not admitted, was excluded over hearsay, as I understand the argument. So if his judgment stood on a foundation that itself is not in the record, what do we do with that? So I think that the record evidence is, one, Jasmine said, this is my age, I'm 17. Two, Haley said what was admissible is she saw that Haley could not buy the cigarettes, one. Two, I told Mr. Tucker her age and we got into a fight about that. Those were the two admissible pieces. I think it certainly could be, well, how did she learn her age? She learned her age from the cigarettes. So I think you could assume that when she's talking to Mr. Tucker about, I fought with him about her age, it would be that she was under 18 because she got the information from the cigarettes. So I think when you do read the record, you're going to say that it certainly is not clearly, it doesn't seem to be in dispute that the fight is about that she's underage. Besides Haley corroborated Jasmine's testimony and Morgan's testimony, testifying that Jasmine couldn't buy cigarettes because she was under 18, was that admissible? My memory is that she said she observed that Haley could not buy cigarettes because she was under age. Then there is an objection about exactly what was said to Mr. Tucker, but I think what was admissible was we got into a disagreement, that is Haley and Tucker, about the age. That's my memory of the record. I think I hear what... So it didn't come in as clearly as I guess in the ideal world of the prosecutor. It did not come in in the very linear way we would like, but I do think that when you read what was admissible, it will support the notion that they were fighting about her age, which would only be a relevant thing to fight about if she were under age. So that's my understanding on the record on that. As far as... So if that doesn't appear to be a reasonable inference, for instance, she couldn't buy cigarettes because she couldn't produce identification, not necessarily because she was under age, but because she just didn't have an ID, that means you're left with Jasmine's very modest statement, which then brings Morgan's testimony back into force again. Yeah, I mean, I guess I still would say that I understand the detail argument, but on the other hand, I can't think of the clearer piece of testimony than I told him how old I am. I told him I'm 17. That is the clearest way for Mr. Tucker to have notice of the age, and I understand the argument is that he didn't respond to that or that he didn't... The argument is that Jasmine said there was no reaction from Mr. Tucker. I'm not sure why one would expect there would be. But, counsel, isn't Morgan's testimony about Tucker on the issue of age is particularly powerful because it involves, as I recall, an explicit statement by him in which he acknowledges that he knows that she's under age. The statement is he was upset that she didn't take responsibility for the needle in the car because she was under age and, therefore, could not be held criminally responsible for it. I mean, that's pretty powerful. That's his explicit acknowledgment that he's under age. I agree with you, and I can't dispute that. That is the spot where there is a statement associated with Mr. Tucker where the evidence is he said, you know, I know her age. So the others are, you know, the Haley one is a fight about her age, but what they said back and forth to each other in the disagreement wasn't testified to, and then Jasmine saying it to him. That is the record. Now, I do think that we are considering all of these things together. So something we haven't talked about at all was that this was cumulative impeachment on the question of bias. She was an immunized witness. It was a very straightforward way to impeach her on bias. You are testifying here today because you have a deal with the government, you have performed for the government in the sense that the government is pleased with what you're going to say, and they have taken steps to make sure that you won't get in trouble for what you say, and that goes right to bias. There was an instruction given as to bias. So this is bias. I mean, the cross-examination that would have happened would have been more bias. You know, you're occurring favor with the government because you're going to tell them what you want to hear because you're hoping for benefits in some other case. Well, that's, again, more bias. So I think that is an important point to keep in mind. But in combination, both of those things would have been more powerful. Sure. More is always better than less. I can't say something as silly as that that's not true. However, what the case law says is once you've established that somebody has a motive to be biased, then more evidence of the same is cumulative. I'm not saying that it should have been turned over, it could have been used, but what would the effect be? The whole question here is do we have a reasonable probability that this outcome would have been different? Well, the opportunity to challenge on bias was right there. As Judge Lopez suggested, and obviously I agree because it was in my brief, that I don't think that the question of how the cross-examination would have gone on the case that was in the U.S. Attorney's Office when there's no evidence she knew was in the U.S. Attorney's Office is unclear. So what you're left with is a question that was asked on direct, are you subject to a state prosecution? Yes. Does that have any effect on your testimony here today? No. That came out on direct. It's not clear what else really would have been done here. So we have an odd Brady situation. We have a Brady situation where the evidence that was not turned over to counsel was in fact put into evidence at trial. So there was a disclosure in effect at that point. It's too late of a disclosure for sure. Right. But we're looking at the prejudicial impact not of a complete nondisclosure but of a belated surprise to a trial disclosure with some evidence you can use to impeach. Correct. And then defense counsel did not impeach on that, did not follow up with that question. Correct. And, you know, Judge LaPlante certainly says, well, to some degree more could have been done, more details, sort of drip, drip, drip kinds of questions could have been asked about it. But at the end of the day, I do think it's important to note, it does just go, not just, but it goes to bias. And the defense counsel had evidence of her bias already in hand. And so that just wasn't, the choice was made not really to pursue bias. And I just don't think that the fact that there was a prosecution in some other jurisdiction on which there was no evidence that these prosecutors had control, and I cited some cases that talk about that. So that's what was available, which was already mentioned to the jury. And then this undeveloped question of whether she knew she was potentially subject to a federal adoption is pretty weak. And so it's weak, it's cumulative, and then at the end of it all, the corroboration, I still say, Jasmine's saying, this is how old I am, is powerful evidence. Mr. Abrams, do you want to go on and get to the jury? Can I say one other thing before I do that? I just want to make sure that I'm clear. I do think that Brady is a count by count, and I just want to note he got 240 months on the drug count, which is 12 months less than he got on the child exploitation count. There's no suggestion made that that was contingent on Haley's testimony at all. And I do think that I want to just point out that I do think it's a count by count analysis on the materiality question. I'm not sure I understand how that plays out analytically, Counsel. Much of the focus here has been on testimony relating to Jasmine's age, what Morgan had to say about it in her interactions with Tucker and so forth. But that's only one of the charges. There are these other two charges. And the defense really focuses on the charge involving the minor. So if we think that there's a real problem there, but not so much of a problem with the other two charges, how do we factor that into our consideration whether there should be a new trial? You could order a new trial on count one, I think, is the possible remedy. But I don't see that there would be a basis for a new trial on count three. Some argument was made about the effect that the facts in count one would have on the sentencing for count two. As to count three, there's no suggestion at all that it had any effect on anything. So I do think it's not the remedy I'm suggesting, obviously, but I think an outcome that is supportable is to say count one gets retried and count three, there is no basis for a retrial because there's, for all the reasons I've said, there's no basis for it. Should I briefly address the jury taint? Yes. Two minutes. Okay. My view is that this is, again, abuse of discretion. Again, we are dealing with Judge LaPlante interviewed all of the witnesses. He concluded at the end of that that he thought there was no jury. All the jurors, you mean? Sorry? All the jurors? Sorry. I meant jurors. He interviewed all the jurors, and at the conclusion of that, he decided, one, there was no juror misconduct, but out of an abundance of caution, I'm going to dismiss the jurors over which questions were raised, and I do not find that there's been eradicable taint of this jury. That is the quintessential district court question. There's nothing on this record that says that that was wrong. And the comments that Juror 7 made, I think as Judge Hayata sort of suggested, did not go to the heart of the case. I think it's common that jurors talk about things like which lawyer is better than what other lawyer, and that doesn't go to whether they think the defendant is guilty or innocent. And as the standard of review, the judge applied the right standard. Did he say the wrong label at the behest of the defendant? Maybe. But when he got into describing what he was doing, it exactly lines up with this court's case law. So I think there was nowhere in the standard of review, and this doesn't come close to an abuse of discretion on not ordering a mistrial. In fact, he went further than he needed to by dismissing the two jurors. If there are no further questions, thank you. Thank you. Thank you, Mr. Aframe. At this time, would Attorney Sittle please come up and reintroduce herself on the record to begin? Good morning. Megan Sittle for Stephen Tucker. I wanted to respond to a few of the points the government just made. First, I think the record is a little more ambiguous than the government describes it with respect to Jasmine and Haley's testimony about Jasmine's age. So Jasmine, we don't actually have the exact words that she says. She's asked, did you ever tell them your age? She says, yes, I did. And that testimony doesn't go totally unchallenged by the defense. They don't cross Jasmine about it, but in the defense case, they bring Heidi, who says she was with Jasmine all the time. She was prostituting with Jasmine. Jasmine told her, don't tell Tucker our age, and that she was going to lie in order to save herself, and she didn't care what that did to Mr. Tucker. So I think that testimony doesn't go unchallenged at trial. And Haley does testify about a bit of a fight that she has with Mr. Tucker, and she tells us one thing that Mr. Tucker says during that fight, which is that he told her that Jasmine was of age, which doesn't necessarily prove what he knew or didn't know, but it certainly suggests that he's not making an admission that he does know her age. Second, the government points out it relies on immunity, as it does in its brief, to say that the impeachment here of Morgan was cumulative. But immunity is a bit more of a mixed bag for the defense than a pending charge would be. So immunity, it's a motive to favor Curry for the prosecution. On the one hand, you're grateful to the government that's giving you this favor, but immunity testimony invariably elicits a response from the government. The government will always ask the witness, can't you lose your immunity agreement if you testify falsely, as they tried to do indeed in this case. So there's also a motive with an immunity agreement to play it straight. So immunity is a bit of a mixed bag, but a pending charge is pure motive for bias in favor of the government. What do you have to say about the fact that the jurors were told that there was a pending potential charge against her? May I respond to that? Yes, please. So there are two pieces of information that were withheld. They were told about the pending state charge. They were never told about the potential federal charge. It doesn't answer the question. So I think that the district court says on the record that not only, yes, there was a disclosure of the pending state charge, but the defense could have gone much, much further than that had it been disclosed in advance of trial. But it's sort of, yes, so during the trial defense counsel, the jury and defense counsel are simultaneously learned that she faces another pending charge. Yes. So in assessing the prosecution's Colston Newcastle type cumulative argument, we've got to put on the side what they already knew was that she was subject to another pending charge in another jurisdiction. Yes, the jury does learn that. What more would have been added? There would have been more information about what that charge was. But defense counsel could have asked that in this trial. Well, defense counsel actually doesn't learn what that charge was at the moment. You know, the defense counsel, all defense counsel learns is the testimony that comes in. Right. He's sitting right there when she says, I've got another charge. That's news, which is unfair to learn at that point. But defense counsel then knows it and could ask any questions he wants about it, right? Yes. And I think, candidly, defense counsel should have followed up more on it at the time. I think below you can see there's some ineffectiveness issues that were raised that the district court set aside for a later date. But the fact is the defense didn't have the disclosure ahead of time and could have planned more in advance had it been made in advance. Thank you. Thank you, Your Honors. That concludes argument in this case.